**NEW CASTLE COUNTY VOCATIONAL TECHNICAL EDUCATION ASSOCIATION, Plaintiff,**

v.

**BOARD OF EDUCATION OF the NEW CASTLE COUNTY VOCATIONAL TECHNICAL SCHOOL DISTRICT, Defendant.**

**Civ. A. No. 82–683–WKS.**

United States District Court, D. Delaware.

Aug. 29, 1983.

Sheldon N. Sandler, Donald Elihu Evans, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiff.

Jeffrey M. Weiner, Neal J. Levitsky, Bayard, Brill & Handelman, Wilmington, Del., for defendant.

## OPINION

STAPLETON, District Judge:

Plaintiff New Castle County Vocational Technical Education Association ("Association"), the exclusive negotiating representative of the teachers in the New Castle County Vocational Technical School District, filed this action against the defendant Board of Education of the New Castle County Vocational Technical School District ("Board"). The Association seeks declaratory and injunctive relief as well as monetary damages, asserting that the Board has violated its rights under the First and Fourteenth Amendments to the United States Constitution and various Delaware statutes. The case is currently before the Court on the Board's motion to dismiss.

## I. BACKGROUND

The Association and the Board entered into a collective bargaining agreement ("Agreement") which became effective July 1, 1979, and was to remain in effect at least until June 30, 1982, a period of three years. The Agreement provided for the continued applicability of its terms after the stated date of termination once negotiations were begun on a successor agreement.[1] When

---

1. Article 21 of the Agreement states in full:

 Negotiation of Successor Agreement

 21:1 The parties agree to enter into negotiations over a successor Agreement in accordance with Chapter 40, Title 14, Delaware Code. Such negotiations shall begin upon mutual agreement no later than 90 days prior to the expiration of this Agreement. Such request to begin negotiations shall be initiated by the employees. Any agreement so negotiated shall apply to employees covered by this Agreement, be reduced to writing and be submitted for ratification by the employees and the Board.

 21:2 This Agreement shall be for a minimum period of three years from the effective date, and negotiations concerned with the terms of this Agreement shall not be opened during that time except as provided for by this Agreement. This Agreement shall remain in

the three-year term of the Agreement ended, the Board announced that it considered the Agreement to have expired as of June 30, 1982.

The condition precedent to the continuation of the terms and provisions of the Agreement (i.e., the beginning of negotiations) has, the Association alleges, been satisfied. The commencement of such negotiations triggers paragraph 21:2 of the Agreement, *supra* note 1, which provides that once such negotiations start, "this agreement shall remain in effect until agreement is reached on a succeeding agreement."

This state of affairs formed the backdrop for two previous legal actions filed in the Delaware courts. The Association filed suit in the Court of Chancery on August 13, 1982, when the Board threatened to curtail continued payment of 100 percent of family plan Blue Cross-Blue Shield benefits for the teachers as of September 15, 1982, in violation of the terms of the Agreement. After briefing and argument by the parties on the merits, the Association's request for a preliminary injunction was denied. The issue was mooted by the Board's agreement to continue to pay the benefits, and the Association and the Board mutually agreed to a stipulated dismissal without prejudice. The Vice Chancellor signed the stipulation on October 22, 1982.

A second, related action was filed by the Association in the Superior Court for the State of Delaware on October 14, 1982, after the defendant refused to pay its teachers the yearly salary step increases called for in the agreement ("step increases") when the new school year began. That action was voluntarily dismissed by the Association on October 19, 1982.

The Association then filed the present action, claiming, among other things, that the Board's continuing failure to pay the step increases has deprived the teachers of constitutionally protected property interests in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. The Association also asserted various claims based on state law.

The Board has moved to dismiss the complaint. The motion asserts, *inter alia*, that the Association's complaint fails to state a claim upon which relief can be granted (Fed.R.Civ.P. 12(b)(6)), fails to establish the Court's jurisdiction (Fed.R.Civ.P. 12(b)(1)), and is barred by the two dismissal rule (Fed.R.Civ.P. 41(a)(1)). It is this motion which is now before the Court.

## II. THE FOURTEENTH AMENDMENT CLAIM

Section 1 of the Fourteenth Amendment to the United States Constitution provides in pertinent part that no state shall "deprive any person of life, liberty, or property without due process of law . . .". Section 5 of the Amendment gives Congress authority to enact appropriate enforcement legislation.[2] One such piece of legislation is 42 U.S.C. § 1983. Section 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To ascertain whether the Association's complaint states a cause of action, I must ask "whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person

effect until agreement is reached on a succeeding Agreement.

21:3 Neither party in any negotiations shall have any control over the selection of the negotiating representatives of the other party. The parties mutually pledge that their representative shall be clothed with all necessary power and authority to make proposals, consider proposals, and make counterproposals in the course of negotiations.

2. Section 5 states:

The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1980).

### A. *Person Acting Under Color of State Law*

■ The Association's complaint alleges that beginning on September 15, 1982, the Board failed to pay appropriate step increases to the teachers represented by the Association. The Constitution of the State of Delaware provides that the General Assembly of the state "shall provide for the establishment of a general and efficient system of free public schools...". *Del.C. Ann.* Const. of 1897, Art. X, § 1. In fulfillment of this duty, the General Assembly has established a state board of education, *Del.C.Ann.* tit. 14, § 101, *et seq.* This board may "establish such vocational-technical centers, or schools as in its judgment will promote the educational interests of the State." *Del.C.Ann.* tit. 14, § 205. When the General Assembly reorganized Delaware's schools by enacting *Del.C.Ann.* tit. 14, § 101, *et seq.,* vocational-technical schools and school boards were included, *Del.C.Ann.* tit. 14, § 1029. Section 1029 gives vocational-technical school boards "the authority to determine policy and adopt rules and regulations for the general administration and supervision of the vocational-technical centers or schools ...". *Id.* Thus, the Board, like all other Delaware school boards, is an instrumentality established by the state to assist it in the performance of an important governmental function. Since a local governmental instrumentality such as a school board qualifies as a person for purposes of the requirements of Section 1983,[3] the Board's actions are clearly those of a person acting under color of state law. *See Morris v. Board of Education of Laurel School District,* 401 F.Supp. 188, 203 (D.Del.1975).

### B. *Deprivation Without Due Process of Law*

The Association characterizes its alleged contract right to step increases as a property interest and the Board's failure to pay as a deprivation of that interest. Since the Board afforded the Association no opportunity to present its position on a step increase prior to the alleged breach, the Association concludes that it has been deprived of property without due process in violation of the Fourteenth Amendment. It candidly concedes that this theory, if accepted, would authorize anyone who has a contract with a governmental agency to sue for a breach of that contract in federal court.[4] I do not believe such a dramatic expansion of federal court jurisdiction is warranted.

■ The Association asserts that paragraph 21:1 of the Agreement, *supra* note 1, provides that it continues in effect until agreement is reached on a succeeding agreement. The Association's members thus are said to have had a contractual right to receive the yearly step increase provided in paragraph 21:1. Such a contractual right can constitute property for purposes of the Fourteenth Amendment. More specifically, as this Court has said before, language in a collective bargaining agreement can create a property interest which implicates due process. *Hayes v. City of Wilmington,* 451 F.Supp. 696, 705–06 (D.Del.1978); *Aiello v. City of Wilmington,* 426 F.Supp. 1272, 1281–87 (D.Del.1976).

■ The initial problem with the Association's analysis is that the Board's failure to act on September 15, 1982 did not deprive the members of the Association of their property interest. If their allegations are correct, they had a contract claim prior to that date to receive a step increase and they still have such a claim. There has been no state action purporting to extinguish or otherwise adversely affect that claim. This

**3.** *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 664–91, 98 S.Ct. 2018, 2022–36, 56 L.Ed.2d 611 (1977); *Reid v. Barrett,* 467 F.Supp. 124 (D.N.J.1979), *aff'd* 615 F.2d 1354 (3d Cir.1980); *Strong v. Demopolis City Bd. of Ed.,* 515 F.Supp. 730, 733 (S.D.Ala.

1981). *See* Antieau, *Federal Civil Rights Acts* § 95 at 176 (1980).

**4.** This assumes, of course, that there is, as here, no Eleventh Amendment problem.

case is thus unlike *Logan v. Zimmerman,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), in which the State of Illinois created a cause of action for victims of employment discrimination but purported to extinguish that claim without due process in the event an administrative hearing on it was not convened within a stipulated period. The Supreme Court there found that a deprivation of property interest had taken place. It is apparent from the opinion, however, that the deprivation occurred, not at the time when the employer allegedly violated the plaintiff's statutory right to be free from employment discrimination, but when the state purported to extinguish the plaintiff's claim to remedial relief. In this case, the State of Delaware recognizes the Association's rights under its contract and, if a right to a step increase exists, it can be enforced in the Delaware courts.[5] There has been no state action purporting to impair any right under the Association's contract.

This case also differs from those in which the defendant's action under color of state law has deprived the plaintiff of the possession of property,[6] or has terminated plaintiff's employment,[7] benefits,[8] or essential services.[9] In those cases, the defendant's conduct has changed the status quo and significantly altered the plaintiff's position. In this case, by contrast, the Board has merely failed to accede to plaintiff's view of the rights of its members; the status quo has not changed.

The second problem with the Association's argument is an even more fundamental one. The Due Process Clause does not protect against all deprivations under color of state law, only those that occur without due process of law. Even if the Association had been deprived of a property interest when the Board failed to pay the step increase, in the circumstances of this case, I could not conclude that this deprivation occurred without due process of law.

 Due process does not always require that there be an opportunity to be heard before the deprivation. The Supreme Court made this clear when it upheld the validity of Louisiana's system for obtaining writs of sequestration, which were available *ex parte,* in *Mitchell v. W.T. Grant & Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974).

Petitioner asserts that his right to a hearing before his possession is in any way disturbed is nonetheless mandated by a long line of cases in this Court, culminating in *Sniadach v. Family Finance Corp.,* 395 U.S. 337 [89 S.Ct. 1820, 23 L.Ed.2d 349] (1969), and *Fuentes v. Shevin,* 407 U.S. 67 [92 S.Ct. 1983, 32 L.Ed.2d 556] (1972). The pre-*Sniadach* cases are said by petitioner to hold that the opportunity to be heard must precede any actual deprivation of private property [footnote omitted]. Their import, however, is not so clear as petitioner would have it: they merely stand for the proposition that a hearing must be had before one is finally deprived of his property and do not deal at all with the need for a pretermination hearing where a full and immediate post-termination is provided. The usual rule has been "[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate" [citation omitted].

*Id.* at 611, 94 S.Ct. at 1902. In short, due process does not demand the following of

---

5. The General Assembly has authorized the Board to enter into contracts. *See, e.g., Del.C. Ann.* tit. 14 § 4001 *et seq.,* "Professional Relations and Negotiations." This constitutes a *pro tanto* waiver of any defense of sovereign immunity based on state law. *George & Lynch v. State,* 7 Storey 158, 197 A.2d 734 (Del.Super. 1964).

6. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

7. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

8. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

9. *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

an inflexible set of procedures in every case. "Due process is flexible and calls for such procedural protections as the situation demands." *Morrisey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The central idea is that the opportunity to be heard—i.e., the process due—come at a meaningful time. What process would be meaningful under the facts as alleged by the Association?

An answer to this question might begin with an examination of *Parratt v. Taylor, supra.* In *Parratt,* an inmate of a Nebraska prison had ordered hobby materials by mail. The materials were lost after their delivery to the prison when prison personnel did not follow the normal procedure for receipt of packages. The inmate brought an action under 42 U.S.C. § 1983 for the value of the materials, claiming that prison officials had negligently deprived him of property without due process of law. While holding that an action under section 1983 could indeed be maintained for a negligent deprivation of federally protected rights by state officials, *id.* 451 U.S. at 535, 101 S.Ct. at 1912, the Court reaffirmed *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979), saying that the Fourteenth Amendment only protects against deprivations that occur without due process of law. *Id.* 451 U.S. at 537, 101 S.Ct. at 1914. Applying these principles to the facts before it, the Court held that the inmate had no cause of action under section 1983, because while he had been deprived of his property, he had not been so deprived without due process. Nebraska law provided a tort claims procedure which was available at the time of the loss. This remedy, though available only *after* the deprivation occurred, satisfied the requirements of the due process clause. As such, the inmate had no claim under section 1983. *Id.* at 542–45, 101 S.Ct. at 1916–17.

In *Parratt,* the Supreme Court noted that in situations like the one there presented "[i]t is difficult to conceive of how the state could provide a meaningful hearing before the deprivation takes place." *Parratt, supra,* at 541, 101 S.Ct. at 1916. The same can be said for situations like the one presented here, although for somewhat different reasons. While a breach of contract may result from intentional, rather than negligent, conduct, the need for a hearing may well not be apparent prior to that conduct and an ensuing complaint. In this case the parties have a dispute regarding the effect of the contract and the Board may or may not have known the Association's position with respect to the step increase prior to September 15, 1982. Unlike the cases in which the alleged wrongful conduct deprives another of benefits currently being enjoyed, where the alleged deprivation is only of an expectancy under a contract, there will frequently be no notice of the existence of a dispute prior to the conduct ultimately claimed to constitute a breach of contract.

Moreover, the state has an interest in utilization of the process it has chosen for the resolution of ordinary contract disputes. *Mathews v. Eldridge, supra,* note 8. When the alleged wrongful conduct does not change the plaintiff's position, the plaintiff's stake will not normally outweigh the state's interest in its chosen process under the balancing test of *Mathews. Id.*

The Supreme Court has cautioned against converting the Fourteenth Amendment into "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). The Court reaffirmed this reasoning in *Parratt:*

> To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning.

*Parratt, supra,* 451 U.S. at 544, 101 S.Ct. at 1917. The same may be said with respect to contract law. As earlier noted, the Association's argument that this alleged breach of contract by the Board constituted a vio-

lation of the Fourteenth Amendment necessarily implies that any breach of contract claim of the type traditionally cognizable under state law is actionable under section 1983 when committed by a governmental body or official acting under color of state law. Federalizing contract actions in this manner would not uphold any value inherent in the Fourteenth Amendment, and I, accordingly, decline to entertain the Association's claim. The Board's motion to dismiss will be granted with regard to the Association's claims under section 1983.[10]

## III. THE FIRST AMENDMENT CLAIM

[6] The Association's complaint asserts that the Board's refusal or failure to pay the step ups "constitutes an illegal attempt to undermine or discourage membership in Plaintiff Association, in violation of the right to freedom of association guaranteed by the First Amendment to the United States Constitution." (Complaint ¶ 14). This assertion has been ignored in the briefing and I do not understand the Association to be currently pressing it. In any event, this statement of legal conclusion is insufficient to transform a breach of contract claim into a First Amendment one.[11] Accordingly, defendant's motion will be granted with respect to this claim unless the Association amends its complaint within twenty days to allege facts indicating that it has a First Amendment claim.

## IV. STATE LAW CLAIMS

If both of the Association's federal claims are dismissed, there will be no jurisdictional basis for entertaining its allegedly pendent state claims. Accordingly, in the absence of a curative amendment, this action will be dismissed without prejudice.

**10.** The Board has also moved to dismiss the Association's complaint based upon the two dismissal rule of Rule 41(a)(1) of the Federal Rules of Civil Procedure. That rule states that a notice of dismissal (i.e., a unilateral dismissal by the plaintiff) operates as an adjudication on the merits when the plaintiff has dismissed the same action in any court once before. In that case, it is undisputed that the dismissal of the

action in the Court of Chancery was by stipulation, not notice of dismissal. Answering Brief, Appendix A. The Board glosses over this point. Accordingly, dismissal would not be justified under the two dismissal rule.

**11.** *Rotolo v. Borough of Charleroi,* 532 F.2d 920 (3d Cir.1976).