ROCKFORD PRINCIPALS AND SUPER-
VISORS ASSOCIATION; Peter S. Par-
is; Linda Burkhard; Dennis M. Harez-
lak; James C. Anderson; and David J.
Rossi, Plaintiffs,

v.

BOARD OF EDUCATION OF ROCK-
FORD SCHOOL DISTRICT NO. 205;
Jacqueline Confer; Jo Minor; George
Stevens; Michael Williams; Terry
Hodges; Avery Gage; and Norman D.
Kearney, Defendants.

No. 88 C 20402.

United States District Court,
N.D. Illinois, W.D.

Aug. 22, 1989.

Henry Close, Rockford, Ill., for plaintiffs.

Scariano, Kula, Ellch & Himes, Chicago Heights, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

This action comes before the court on the defendants' motion to dismiss. For the reasons set forth below, the court dismisses the claims by the Rockford Principals and Supervisors Association and dismisses the individual defendants from Count II. Further, the court strikes the plaintiffs' claim to punitive damages. The court de-

nies all other aspects of the motion to dismiss.

## NATURE OF THE CASE

The plaintiffs in the instant case are comprised of the Rockford Principals and Supervisors Association ("Association"), an unincorporated association made up of approximately eighty-two administrators (i.e. principals, assistant principals and supervisors) employed by the Board of Education of Rockford School District # 205, and five individual administrators, Peter S. Paris, Linda Burkhard, Dennis M. Harezlak, James C. Anderson and David J. Rossi who make up the executive board of the Association. The defendants in the instant case are comprised of the Board of Education of Rockford School District # 205 ("Board") and the following individual members of the Board at the time of the complained-of acts: Jacqueline Confer, Jo Minor, George Stevens and Michael Williams.

The genesis of the instant controversy can be traced to joint efforts by members of the Board and a group of administrators to develop a workable plan for increasing administrators' salaries to a level commensurate with the salaries of administrators throughout the state. Through these joint efforts, an "Administrative Salary Package" ("Package") was compiled and proposed to the Board on May 26, 1987. The Package contained a plan for a series of graduated increases in administrative salaries for the school years 1987–88, 1988–89 and 1989–90. The Package listed the proposed salary for each individual administrator. After discussion at both the May 26, 1987, and June 9, 1987, board meetings, the Board voted to approve the Package on June 9, 1987. Accordingly, administrators received their salary increases as set out in the Package for the 1987–88 school year. Subsequently, at a June 28, 1988, Board meeting, the Board rescinded the Package approved on June 9, 1987 and substituted a uniform 5% salary increase for administrators during the 1988–89 school year.

In response to the Board's actions, the plaintiffs bring a two count complaint against the defendants alleging a deprivation of a property interest without due process of law pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983 and a pendant state claim for breach of an implied contract.

Presently, the defendants move the court to dismiss the complaint against them. The defendants offer numerous and sundry reasons for dismissal. The court will attempt to address and answer the defendants' contentions in order.

## DISCUSSION

### ASSOCIATIONAL STANDING

The defendants' first challenge is to the Association's standing to sue as a representative of the Association's members. In particular, the defendants argue that allowing the Association to sue in a representational capacity is inappropriate based on the nature of the claims and relief requested in the instant suit. The defendants continue that the claims alleged and relief requested require the participation of the Association's individual members and thus renders a representative suit inappropriate. The plaintiffs respond that the instant case is a perfect example of where associational representation is not only appropriate but a preferred way of putting the members' claims at issue.

In deciding whether a plaintiff's standing to sue is appropriate, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

In *Hunt v. Washington State Apple Advertising Com'n.*, 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), the Supreme Court set out the three requirements necessary for an association to have standing to bring suit on behalf of its members. The three requirements were derived from the Court's earlier decision in *Warth*, 422 U.S. at 511, 95 S.Ct. at 2211–12, and are as follows:

> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing

to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested require the participation of individual members in the lawsuit.

*Hunt,* 432 U.S. at 342–43, 97 S.Ct. at 2441.

■ In the instant case, there is little dispute over whether the plaintiff Association meets the first two requirements. Rather, the defendants concentrate on the third and final requirement in their motion to dismiss: "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit," *Id.;* or as stated in *Warth:* "... so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause,...." *Warth,* 422 U.S. at 511, 95 S.Ct. at 2212.

The defendants explicitly assert that the plaintiffs' due process claims, and implicitly that their contract claims, do require individualized proof. Furthermore, the defendants also maintain that the plaintiffs' prayer for monetary relief, namely the rescinded salary increases, will also require individualized proof. In support of their first argument, the defendants remark that protected property interests are created and defined by state law. The defendants continue that the plaintiffs' alleged property interest is based on implied contractual rights recognized in Illinois. The defendants postulate that the nature of the implied contracts requires an inquiry into each member's intent to contract.

The plaintiffs retort that no "state of mind" and therefore no individualized proof is necessary to establish the existence of the parties' contractual obligation. All that needs to be established, according to the plaintiffs, is that the salary increases contained in the Package were communicated to all the members of the Association.

The court does not agree. Individualized proof will be necessary to prove the existence of the alleged contractual-type relationships whether termed as "mutually explicit understandings" or implied employ-

ment contracts. The unilateral action .of the Board approving and "communicating" the Package to the administrators is certainly not enough to show the formation of a contractual relationship nor even an informal understanding. Formation of a contractual relationship requires mutual assent on the subject to which the parties are contracting. *Loeb v. Gray,* 131 Ill.App.3d 793, 86 Ill.Dec. 775, 475 N.E.2d 1342 (Ill. App. 5 Dist.1985). Even in the context of an implied employment contract, the requirements of formation are not present unless both parties intended to conract, in other words, an offer and acceptance. *See Vail v. Bd. of Educ. of Paris Union Sch. Dist. No. 95,* 706 F.2d 1435, 1438 (7th Cir. 1983), *aff'd by equally divided court,* 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984). Determining whether the plaintiffs were aware of and accepted the defendants' offer requires that the individual circumstances of the Association's members be revealed. For contrary to the plaintiff's argument, proof of the plaintiff's blanket offer is insufficient to prove the existence of the alleged contracts or even "understandings" without proof of the individual member's acceptance.

Moreover, the individualized nature of the plaintiffs' claims is reflected in their prayer for monetary relief. The plaintiffs' prayer for monetary relief not only reinforces the view that individualized proof is necessary to establish the plaintiff's claims but it also provides a separate reason for requiring individualized proof.

The defendants point out that when faced with an association seeking monetary relief on behalf of its members, courts invariably find that individualized proof is necessary and thus associational standing lacking. *See Telecommunication Research v. Allnet Commun.,* 806 F.2d 1093 (D.C.Cir.1986). *Reid v. Dept. of Commerce,* 793 F.2d 277 (Fed.Cir.1986) (individualized proof still necessary where association not seeking damages *per se* but reinstatement relief and corresponding back pay). *Organ. of Minority Vendors v. Ill. Cent. Gulf R.R.,* 579 F.Supp. 574, 596 (N.D.Ill.1983) (require individualized proof

where money claims are not common to the entire membership nor shared by all to an equal degree). *Pesticide Public Policy v. Village of Wauconda,* 622 F.Supp. 423 (N.D.Ill.1985) (held that an association seeking a declaration that defendants are liable for costs and expenses is tantamount to seeking damages and thus association lacks standing), *aff'd,* 826 F.2d 1068 (7th Cir.1987); *Vietnam Veterans of America, Inc. v. Guerdon Indus.,* 644 F.Supp. 951, 966 (D.Del.1986) (damages in fraud case will require proof unique to each member); *Committee of Blind Vendors v. District of Columbia,* 695 F.Supp. 1234, 1238–39 (D.D. C.1988) (held no standing for association when seeking damages for breach of contract).

The plaintiffs respond that while it is true that no courts have allowed associational standing in circumstances where monetary relief is requested there is no *per se* rule against such standing. The plaintiffs continue that under the unique circumstances of this case, their request for monetary relief is of no moment for purposes of associational standing.

The court agrees with the plaintiffs' assertion that no *per se* rule exists with regard to associations seeking money damages on behalf of their members, although in some quarters there are rumblings that such a rule should exist. *See Telecommunications,* 806 F.2d 1093, 1097–98 (Bork, J., concurring). Rather, the *de facto* rule against associations seeking monetary damages as a representative of its members exists because it just happens that proving the existence and extent of damages often, if not always, requires individualized proof and participation, an eventuality that robs an association of standing.

The plaintiffs persist by arguing that the usual circumstances surrounding a request for monetary relief and precluding associational standing are not present in the instant case. In the main, the plaintiffs highlight the fact that all the members of the Association have a stake in the litigation and have agreed to let the Association pursue their interests. Just as importantly, the plaintiffs contend that any money damages are easily ascertainable.

With regard to the unanimity of the Association's members, the court finds that certain problems associated with the preclusive effect of a damage judgment rendered to an Association could be avoided. *See Telecommunication,* 806 F.2d at 1097–98 (detailing problems concerning the identity of interests between the Association and its members and its ramifications on claim preclusion and *res judicata*).

The fact that the Association and all the members share a single-mindedness of purpose, however, does not obviate the need for individualized proof of damages nor does the fact that such proof may be "easily ascertainable." The plaintiffs make much of the fact that the monetary relief for each individual member could be arrived at based on straightforward mathematical calculations. The plaintiffs miss the point. The form of the individualized proof, be it in-court testimony, affidavits or mathematical calculations, is not dispositive; rather, the existence of such proof is. *See Telecommunications,* 806 F.2d at 1094.

In the instant case, individualized proof regarding each member's damages is necessary even if different calculations are all that is necessary. Many of the relevant administrators are on different pay scales and the rescinded increases would affect their respective salaries differently. Furthermore, due to administrator turn-over, some old administrators have left and presumably some new administrators have recently arrived, thus creating additional permutations as to the increases owed among the members. The damages of the members are not shared equally and individualized proof is required in the classic sense of *Warth, Hunt* and *Telecommunications.*

In sum, this third requirement cannot be avoided simply because one type of individualized proof is perceived to be more easily entered into evidence than another kind. The following rationale persists regardless of the form of the individualized evidence:

> Underlying the limitation that no individualized participation be required is a de-

sire on the part of the courts to guarantee that when an association appears as a party to a law suit, it is the most appropriate entity to do so. If it is not a more appropriate party than the injured member, then it is the injured member who should be bringing suit. As the Supreme Court declared in *Duke Power Company v. Carolina Environmental Study Group,* 438 U.S. 59, 80 [98 S.Ct. 2620, 2634, 57 L.Ed.2d 595] (1978), a powerful reason for denying standing to third parties is to "[assure] that the most effective advocate of the rights at issue is to champion them.

*Mountain States Legal Foundation v. Dole,* 655 F.Supp. 1424, 1431 (D.Utah 1987).

Accordingly, because of the nature of the claims and relief requested, the court finds that individualized proof will be necessary, thus precluding the Association from suing on behalf of its members. Because the court has decided that only the Association lacks standing to pursue its claims, the court must still address the defendants' other contentions for the benefit of the five remaining individual plaintiffs.

In analyzing a motion to dismiss a complaint for failure to state a claim, this court will not grant such a motion unless it is clear that no set of facts which the plaintiff could prove, consistent with the complaint, would entitle the plaintiff to relief. *Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Murphy v. Lane,* 833 F.2d 106, 107 (7th Cir. 1987); *Vaden v. Village of Maywood,* 809 F.2d 361, 363 (7th Cir.), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987). The court will accept all well-pleaded factual allegations in the complaint as true. *Vaden,* 809 F.2d at 363; *Doe v. St. Joseph's Hospital of Fort Wayne,* 788 F.2d 411, 414 (7th Cir.1986). In addition, the court will construe the complaint liberally and will view the allegations contained therein in a light most favorable to the non-moving party, in this case the plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984); *Wolfolk v. Rivera,* 729 F.2d 1114, 1116 (7th Cir.1984).

## IMPLIED CONTRACT CLAIM IN COUNT II

■ The defendants assail the plaintiffs' breach of contract action on a variety of fronts. The defendants first attempt to distinguish the situation in the instant case from the circumstances in *Dulduulao v. St. Mary of Nazareth Hospital,* 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987) (found employee handbook created an implied employment contract). In the main, the defendants generally describe how the terms of the plaintiffs' employment is far more constrained by statute than the plaintiff employee in *Dulduulao.* The defendants, however, fail to connect concretely the existence of these statutory constraints and the inability of the instant parties from contracting as to the plaintiffs' salaries. Perhaps, the reason no connection is made is because there is no relevant connection for our purposes. *See Perlin v. Bd. of Ed. of City of Chicago,* 86 Ill.App.3d 108, 41 Ill.Dec. 294, 299, 407 N.E.2d 792, 797 (Ill. App. 5 Dist.1980) (found that School Board can bind itself to employment contract so long as there is no violation of School code, in addition, no official written contract is required to bind); *Libertyville Ed. Ass'n. v. Board of Ed., Etc.,* 56 Ill.App.3d 503, 13 Ill.Dec. 741, 371 N.E.2d 676 (Ill.App. 2 Dist. 1977) (School Board had power to enter into multi-year pact with teachers).

Next, the defendants more directly attack the pleadings in Count II by pointing out that the minutes of the Board's meetings and the Package do not comprise an "offer" and that nowhere in the allegations is there an averment of "awareness" of the offer or, in other words, an "acceptance." The plaintiffs, while admittedly fuzzy on the applicable law, respond that an action for breach of contract has been properly alleged. The court finds, given the deferential "short and plain" requirements of Fed.R.Civ.P. 8 and accepting the allegations as true, that the plaintiffs have adequately pled a contractual action cognizable under the law of Illinois. The plaintiffs

have pled that a contract was established by the respective conduct of the parties; in other words, the board's approval and dissemination of the Package, and the plaintiffs' acceptance through continued performance. The details of "subjective awareness" and acceptance are not necessary at this stage.

## INDIVIDUAL DEFENDANTS IN COUNT II

■ Next, the defendants argue that the individual Board members should be dismissed from Count II since there is no allegation that the Board members as individuals breached a contract or were privy to a contract between the administrators and themselves. The plaintiffs have not responded to this contention. A cursory review of Count II of the complaint reveals that the individual Board members are not privy to the allegedly breached contract between the Board and the plaintiffs. Accordingly, the court dismisses the individual Board members from Count II, but denies the defendants' motion to dismiss Count II in its entirety for failing to state a claim.

## PROCEDURAL DUE PROCESS

Next, the court turns to the defendants' assertions that Count I fails to allege a cognizable property interest. In addition, the defendants continue that even assuming an interest exists no deprivation of said property interest has occurred. The plaintiffs naturally dispute these contentions.

In addressing these contentions, the court must heed the familiar requirement of pleading a procedural due process claim. In essence, the plaintiffs must plead that a person acting under color of state law has deprived them of life, liberty or property without due process of law. 42 U.S.C. § 1983. What qualifies as property and a deprivation without due process is the present inquiry before the court.

### Property Interest

■ Again, specifically with regard to property, the relevant principles repeat a familiar refrain:

> To have a property interest in a benefit, a person must clearly have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
>
> \* \* \* \* \* \*
>
> Property rights, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlements to such benefits.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

> [P]roperty interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." A person's interest in a benefit is a "property interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

Such rules and understandings may be evidenced by a formal written contract or by no more than oral statements. To be sure, contractual relationships and in particular for our purposes, implied contracts may give rise to a legitimate claim of entitlement and hence protectable property interests. *Vail*, 706 F.2d at 1445 (Eshbach, J., concurring).

Conversely, the fact a contractual relationship exists does not ensure the existence of a protectable property interest. *Physicians' Service Med. Group v. San Bernadino*, 825 F.2d 1404, 1408 (9th Cir. 1987). While state law may be the ultimate source for the notion of property rights, it is federal law that determines whether such rights rise to the level of a constitutionally protected property interest. *Memphis Light, Gas & Water Division v.*

*Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978). In short, the federal courts must decide if a contract gives rise to a protectable property interest or no more than common law contractual rights.

The defendants characterize the contract in question as one for future salary increases.[1] The defendants argue that contractual rights to a future salary increase do not implicate an interest in need of constitutional protection. The defendants continue that to raise a breach of this type of contract to a constitutional level is tantamount to transforming Section 1983 into a font for state contract actions. In support, the defendants cite Judge Posner's decision in *Brown v. Brienen*, 722 F.2d 360 (7th Cir.1983) and the District Court of Delaware's decision in *New Castle County v. Bd. of Educ.*, 569 F.Supp. 1482 (D.Del. 1983). Despite the defendants arguments and citations to the contrary,[2] the court cannot agree that the instant complaint fails to allege a cognizable property interest.

Undoubtedly, every contract involving a governmental entity does not give rise to a property interest. Indeed, such status is generally reserved only for "employment contracts." See *Physician's Serv.*, 825 F.2d at 1409. While the rationale behind the special treatment afforded government employment contracts remains generally unspoken, courts invariably find that contracts promising continued employment generate a property interest in that government employment. *Id.* Accordingly, terminations and suspensions of employees under government contract often lead to due process violations. In reaching this conclusion, courts seem to have focused on the "importance" of the interest to the government employee. *Physicians' Serv.*, 825 F.2d at 1409, *Brown*, 722 F.2d at 361; *Pollard v. Chicago*, 643 F.Supp. 1244, 1255 (N.D.Ill.1986); similar to where courts have concluded that a government benefit should be accorded "property" status mainly because the recipient's livelihood is at stake. See e.g. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 543, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *See also Ramsey v. Bd. of Ed.*, 844 F.2d 1268, 1273 (6th Cir.1988).[3]

---

**1.** The court notes that the characterization of the salary package raises as "future" increases may be a bit inaccurate. The Package and its three year program to boost salaries to near the Illinois average was a year old at the time of its recission. Past performance on both parties' part may have occurred. To unilaterally proclaim that the plaintiffs' continued performance was in consideration for only the first year salary increase may not be a valid assumption. For example, the administrators in question may not have foregone other job opportunities in the face of only a one year salary package boasting a lesser interest.

Nevertheless, the fact the raises have not yet been "earned" is irrelevant for our purposes. The interest deprived by a government when it breaches an employment contract is by nature a "future" benefit. In the context of a termination, the employee under contract loses his or her interest in continued or "future" employment. The "future" quality of the interest only reinforces the importance of the contract giving rise to a legitimate entitlement and not merely an unilateral expectation of continued employment.

**2.** In *Brown v. Brienen, supra,* the Seventh Circuit appeared to limit cognizable property interests to breaches of government employment contracts involving terminations. The *Brown* court, however, purposely avoided such a holding by focusing on whether a deprivation occurred. *Brown*, 722 F.2d at 365. In *New Castle, supra*, the court found no property interest stemming from a contract granting salary step increases. The *New Castle* court, however, failed to explain the reasoning behind its decision merely stating step increases were not property. *New Castle*, 569 F.Supp. at 1486.

In contrast, the court has encountered decisions indicating a property interest does exist in the instant case. In *Begg v. Moffet*, 555 F.Supp 1344 (N.D.Ill.1983), the court held a contract promising a pay increase could give rise to a protectable property interest. In *Anderson v. City of Northlake*, 500 F.Supp. 863 (N.D.Ill.1980) *aff'd* 657 F.2d 272 (7th Cir.1981) *cert. denied* 454 U.S. 1081, 102 S.Ct. 636, 70 L.Ed.2d 615 (1981), the court acknowledged that if a contractual relationship was established between the parties, then a property interest in the continued receipt of pay increases could be created. *Anderson*, 500 F.Supp. at 869.

**3.** Some courts have further refined the type of employment contract rating constitutional protection from all government employment contracts to only government employment contracts for tenure. While livelihood may still be at stake, these courts conclude that the injury of a loss of employment for a fixed period is easily defined and compensated in a state breach of contract action. See e.g. *Ramsey*, 844 F.2d at 1273–74.

Does this "important interest" notion limit due process protection only to interests in continued employment (i.e. only termination and suspensions may lead to due process violations) or can deprivations short of terminations and suspensions implicate the Fourteenth Amendment?

Given the lack of guidance on this subject from superior authority and the stage of the instant proceedings, the court is not prepared to proclaim that a deprivation of a salary increase does not seriously affect the plaintiffs' livelihood nor that the plaintiffs' interests in their increases could never rise to the level of protectable property interests.

In essence, the court finds that the constitutionally revered interest in continued employment must be to some degree intertwined with the economic fruits of that employment. *See Lewandowski v. Two Rivers Public School Dist.*, 711 F.Supp. 1486, 1495 (E.D.Wis.1989), *quoting Jett v. Dallas Independent School District*, 798 F.2d 748, 754 n. 3 (5th Cir.1986), *aff'd in part and rem'd in part*, — U.S. ——, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Clearly, a substantial part of the benefit derived from a government job is from the compensation for that job. Hence, the acknowledged importance of an employee's interest in his continued employment must be shared somewhat with the employee's interest in continued payment at a particular rate.

Granted every specific benefit that may be derived from an employee's interest in continued employment may not lead to a protectable property interest; the specific benefit of a salary increase may be different. *See Moore v. Borough of Monmouth Beach, slip op.*, (D.N.J., October 9, 1986) (alleged property interest in raise created by ordinance withstands motion to dismiss). *See also Hermes v. Hein*, 511 F.Supp. 123 (N.D.Ill.1980) (property interest in promotion) *aff'd on other grounds*, 742 F.2d 350 (7th Cir.1984); *Auriemma v. City of Chicago*, 601 F.Supp. 1080 (N.D.Ill.1984) (property interest in former positions after demotion); *cf. Volk v. Coler*, 845 F.2d 1422, 1430 (7th Cir.1988) (no property interest in

employment at a particular office); *Lyznicki v. Bd. of Education*, 707 F.2d 949, 952 (7th Cir.1983) (questioned whether a lateral transfer, involving no loss of pay, could ever be sufficient to violate Fourteenth Amendment); *Altman v. Hurst*, 734 F.2d 1240, 1242 (7th Cir.1984) *cert. denied* 469 U.S. 982, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984) (interest in vacation time does not rise to the level of a protectable property interest); *Pollard v. City of Chicago*, 643 F.Supp. 1244, 1255 (N.D.Ill.1986) (held lateral transfer of employee did not implicate an interest protected by the Fourteenth Amendment); *CTU v. Bd. of Educ. of Chic.*, 569 F.Supp. 597 (N.D.Ill.1983) (teacher reassignment does not evoke fourteenth amendment protections).

Recognizing the possibility that the deprivation of the promised raises may seriously damage the plaintiffs' standard of living and perhaps livelihood, the court is reluctant to find unequivocally that no constitutionally protectable interest is present. Thus, based on the facts as alleged and taking them in a light most favorable to the plaintiff, the court holds that the alleged mutual understandings between the parties give rise to a protectable property interest.

The Process Due

■ Of course, the presence of a property interest is of little practical significance if no deprivation of the interest has occurred. The defendants maintain that even assuming a property interest exists in the plaintiffs' alleged contracted-for salary increases, none of the plaintiffs' due process rights is violated, because existing state procedures, namely a state court contract claim, is available to the plaintiffs. The defendants surmise that under the teachings of the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a state court contract action is all the process due to the plaintiffs. Thus, the defendants conclude that no deprivation of the plaintiffs' due process rights has been alleged. The court cannot agree, at this stage, with this conclusion. The court finds that the defendants are attempting to stretch the holding

of *Parratt* to fit the instant case. While the court acknowledges that some courts may have automatically made a leap from *Parratt's* tort action to their respective contract actions, the court heeds the caution and persuasive reasoning of courts who have recognized *Parratt's* parameters, particularly at such an early stage in the proceedings.

A significant case, for our purposes, is *Vail v. Bd. of Education of Paris Union Sch. Dist. No. 95, supra.* As part of the decision in *Vail,* the Seventh Circuit dealt with the question of the proper "process" due a plaintiff when the School Board deprived the plaintiff of a property interest in continued employment, derived from an implied contract between the parties.

Judge Eshbach in a concurring opinion in *Vail* examined the ramifications of the *Parratt* decision and other relevant Seventh Circuit decisions, given the existence of state contract remedies and the claims before the Circuit Court. Judge Eshbach first described the holdings in *Parratt:*

> The first question was whether due process required a predeprivation hearing. The court held that no such hearing was required, not because of the existence of postdeprivation remedies, but because a predeprivation hearing simply could not be meaningful—indeed, in the case of negligent deprivations, as the Court observed, a predeprivation hearing would be a practical impossibility. Hence, the state's failure to provide Parratt with a hearing before the state officials lost his property did not violate due process. Now it is true that the court said that in prior cases excusing a lack of predeprivation hearing, the decisions rested in part on the availability of a postdeprivation proceeding, but in those cases a predeprivation hearing would have been meaningful, but the exigencies of the situation justified postponing the hearing until after the initial deprivation. The decisions in those cases—that no violation of process had occurred—indeed rest ⌐ on the availability of postdeprivation remedies, because once it was determined a predeprivation hearing was not feasible, that could not end the due process analysis. Nor did that conclu-

sion end the due process analysis in *Parratt.* Rather, the second question which *Parratt* decided was whether the postdeprivation remedy accorded due process of law. The Court examined the remedy provided by state law, and concluded it would provide *Parratt* a meaningful opportunity to be heard regarding his claim, and that satisfied due process. A contrary conclusion in *Parratt,* of course, would have made § 1983 a font of tort law since predeprivation hearings are conceptually absurd with respect to injuries caused by the negligence of state actors.

*Vail,* 706 F.2d at 1448 (Eshbach, J., concurring).

Next, Judge Eshbach differentiated between Parratt's tort circumstances and the termination of the plaintiff by the school board in *Vail* as follows:

> In this case, before the initial deprivation of Vail's property interest occurred—that is, before Vail was discharged—he could have been provided with a hearing, and the hearing would have provided him with a meaningful opportunity to guard against the risk of a wrongful or erroneous decision. The hearing requirement cannot guarantee an erroneous decision will not occur, but it does serve as a check on that possibility.
>
> \*    \*    \*    \*    \*    \*
>
> ... Moreover, and I think significantly, ministerial actions were at issue in *Parratt,* whereas in this case, a discretionary action is at issue. But in any event, assume that a predeprivation hearing is only required when the deprivation occurs as a result of an established state procedure. In this case, it did. The school board established the procedure for terminating individuals such as Vail, and that procedure was to vote on the matter without providing such individuals with a reason for the decision, nor a meaningful opportunity to be heard. Moreover, the Board authorized the termination; in *Parratt* no responsible official authorized the loss.

*Id.,* at 1449, 1450.

Finally, Judge Eshbach explained the different aims and hence remedies between

federal due process claims and state contract claims as follows:

> The fact that plaintiff relies upon his employment contract to establish a property interest worthy of protection through the due process clause does not mean that his only remedy is a contract action in state court. A civil rights action based on the deprivation of due process and a contract action to recover damages for a breach are independent remedies. The civil rights action based on deprivation of a property interest established by contract seeks vindication for the arbitrary manner in which the contract was breached. A "garden variety" contract action seeks damages only for the losses caused by the breach once it has occurred in any manner whatsoever.

*Id.*, at 1449, *quoting Hostrop v. Board of Junior College District No. 515*, 471 F.2d 488, 494 n. 15 (7th Cir.1972).

In a thorough and well-reasoned opinion in *Begg v. Moffitt*, 555 F.Supp. 1344 (N.D. Ill.1983), Judge Marshall also points out the narrow scope of *Parratt* and its inapplicability to the due process action in question. In particular, the *Begg* court found that the mere existence of a state contract action did not defeat a § 1983 due process action arising, in part, from an alleged breach of contract. As the *Begg* court explains:

> *Logan v. Zimmerman Brush*, 455 U.S. 422, 102 S.Ct. 1148 [71 L.Ed.2d 265] (1982) squarely holds that, where it is practicable for the state to provide a predeprivation hearing, due process requires it to do so and the availability of a postdeprivation remedy does not provide due process. "[T]he Court's decisions suggest that, absent 'the necessity of quick action by the State or the impracticality of providing any predeprivation process,' a postdeprivation hearing here would be constitutionally inadequate." *Logan*, 455 U.S. at 436, 102 S.Ct. at 1158 (*quoting Parratt*, 451 U.S. at 539, 101 S.Ct. at 1914). *Logan* confines *Parratt* to the situation where state postdepriva-

tion remedies supply due process because it was impracticable for the state to have offered any predeprivation process. This result is consistent with general principles of due process, and provides an interpretation of *Parratt* that creates no conflict with prior precedents.

*Begg*, 555 F.Supp. at 1360–61.

Judge Marshall concluded, in his denial of the motion to dismiss, that in absence of evidence indicating a predeprivation remedy was impractical, the availability of a postdeprivation state remedy is no defense to a claim of constitutional entitlement to a predeprivation hearing. *Id.*, at 1365.

In the instant case, as in *Vail*, the action by the School Board may not be random or unauthorized; rather, the Rockford School Board may have "established the procedure for terminating" the plaintiffs' salary increases "and that procedure was to vote on the matter without providing such individuals with a reason for the decision, nor a meaningful opportunity to be heard." *See Vail*, 706 F.2d at 1450. Similarly, in the instant case as in *Begg*, there is no indication that a predeprivation remedy would be impossible or impractical for the defendants to provide. Accordingly, the existence of state postdeprivation remedies is not a defense to the plaintiffs' Section 1983 action at this juncture of the proceedings.

## PUNITIVE DAMAGES

■ Finally, the defendants move the court to strike the plaintiffs' punitive damage claim. The defendants correctly assert that punitive damages are unavailable against a governmental body in a Section 1983 action. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Furthermore, the defendants point out that the plaintiffs, having failed to explicitly indicate in what capacity the defendants are sued, have implicitly or presumptively sued the defendants in their official capacity.[4] Consequently, the defendants conclude no punitive dam-

---

**4.** It is well recognized that official capacity suits against governmental officials are merely another way of expressing an intent to sue the rele-

vant governmental entity. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

ages are available whatsoever in the instant case.

The plaintiffs do not argue the defendants' first point regarding a municipality's liability for punitive damages. Instead, the plaintiffs assert that the individual board members have been sued in their individual capacities and, thus, punitive damages may be appropriate. The defendants respond by citing *Kolar v. County of Sangamon*, 756 F.2d 564, 568–69 (7th Cir.1985), for the proposition that absent a specific indication of capacity an official capacity suit is presumed.

While the circumstances in *Kolar* are not identical to the instant case, they are similar enough that *Kolar's* rationale still applies. The defendants in both cases are identified as public officials and their offensive conduct solely involved the conducting of their official duties. *Kolar*, 756 F.2d at 568. Furthermore, in the instant case, the individual defendants are grouped with the Board in the complaint and are generally referred to as "defendants" when relevant acts are described. Nor are any individual defendants singled out in the plaintiffs' prayer for relief.

Accordingly, the court adopts the presumption that the individual defendants are sued in their official capacity. *Id.*, at 568–69. Consequently, the court strikes the plaintiffs' request for punitive damages as such damages are unavailable in an official capacity suit.

## CONCLUSION

For the reasons set forth above, the court enters the following order:

(1) The court dismisses the Association's claims in Count I and II.

(2) The court dismisses the claims against the individual defendants in Count II but denies the motion for failure to state a claim in Count II against the Board.

(3) The court strikes the plaintiff's punitive damage claims.

(4) Finally, the court denies all other aspects of the motion to dismiss.

The court allows the plaintiffs twenty-one (21) days to amend their complaint consistent with the court's order.