**RETIRED CHICAGO POLICE ASSOCIATION, Plaintiffs,**

v.

**The CITY OF CHICAGO, et al., Defendants.**

**No. 90 C 0407.**

United States District Court, N.D. Illinois, E.D.

March 23, 1992.

Clinton A. Krislov, Krislov & Associates, Ltd., John J. Lowrey, Lowrey & Smerz, Chicago, Ill., for plaintiffs Retired Chicago Police Ass'n and proposed intervenors.

Kelly R. Welsh, Corp. Counsel, City of Chicago, Susan Lichtenstein, Stuart D. Fullerton, Stan Berman, Cheryl Colston, Asst. Corp. Counsel, City of Chicago Law Dept., Chicago, Ill., for defendants City of Chicago, Richard M. Daley, Mayor, Miriam Santos, Treasurer and Walter Knorr, Comptroller.

Kevin M. Forde, Mary Anne Mason, Katrina Veerhusen, Kevin M. Forde, Ltd., Chicago, Ill., for defendant Policemen's Annuity and Ben. Fund.

Martin J. Burns, Thomas J. Esler, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for defendant The Firemen's Annuity and Ben. Fund of Chicago.

Frederick P. Heiss, Boyle & Heiss, Ltd., and William A. Marovitz, Marovitz and Edelstein, Chicago, Ill., for defendant The Mun. Employees' Annuity and Ben. Fund of Chicago, and for defendant Laborers and Retirement Bd. Employees' Annuity and Ben. Fund of Chicago.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiff Retired Chicago Police Association ("RCPA") filed this 42 U.S.C. § 1983 class action against the City of Chicago ("the city"), three of its officers, and four city employee pension funds. RCPA and various proposed intervenors (collectively "plaintiffs") purport to represent a class of pension plan annuitants who began participating in the city's Annuitant Healthcare Plan ("the health care plan") after December 31, 1987 and prior to August 23, 1989. Plaintiffs allege that a settlement agreement stemming from earlier litigation between the city and the pension funds changed the terms of the city's health care plan and the city and pension funds' related contractual obligations, thereby violating the Fourteenth Amendment due process and equal protection rights of purported class members. Plaintiffs further contend that the changes in the health care plan violate contract clause principles and that the settlement agreement between the city and funds is unenforceable on grounds of promissory estoppel, invalid special legislation violating the Illinois State Constitution, and breach of fiduciary duty by the fund trustees. Plaintiffs seek declaratory and injunctive relief preventing the implementation of the settlement agreement, which allegedly increases the cost of health care coverage to the purported class.

Plaintiffs moved to intervene and for class certification pursuant to Fed.R.Civ.P. 23(b)(2). After extensive briefing, the court denied the motions for intervention and class certification on several grounds. *Retired Chicago Police Association v. City of Chicago*, No. 90 C 407 slip op. (N.D.Ill. February 6, 1992). Plaintiffs now move for reconsideration.

The court's denial of class certification raised a concern about RCPA's standing to continue participating as a party in this action. Thus, prior to the filing of plaintiffs' present motion for reconsideration, the court directed the parties to brief the issue of RCPA's standing. The court also permitted additional briefing on the issues raised in plaintiffs' motion for reconsideration of the denial of intervention and class certification.

The motion for reconsideration is granted. The February 6, 1992 memorandum opinion and order is vacated. The court reconsiders plaintiffs' motions for intervention and class certification in light of the issues raised in plaintiffs' motion for reconsideration. After reconsidering the motions for intervention and class certification, the court addresses RCPA's standing to maintain this action.

## BACKGROUND

### A. General Background

The four defendant pension funds—the Policemen's Annuity and Benefit Fund ("police fund"), the Firemen's Annuity and Benefit Fund ("firemen's fund"), Municipal Employees' Annuity and Benefit Fund

("municipal fund") and the Laborers' and Retirement Board Employees' Annuity and Benefit Fund ("laborers' fund") (collectively "the pension funds")—were created and operate under authority of Articles 4, 5, 6 and 11 of the Illinois Pension Code, Ill.Rev. Stat. ch. 108½, to provide for and administer pension benefits of certain defined retired city employees. Complaint ¶ 10. RCPA is an Illinois not-for-profit corporation organized for the purpose of protecting the benefits of retired Chicago police officers and their spouses. *Id.* ¶¶ 5, 20.

Since the early 1980's, the city has made health care coverage available to its retired employees under the city's self-insured health care plan. *Id.* ¶¶ 21, 24. In April 1982, the city set the monthly premium for annuitants participating in the health care plan at $55 for a single person and $21 for medicare eligible participants. *Id.* ¶¶ 21–22. Later that year, the State of Illinois enacted legislation to take effect in January 1983, specifically addressing health care coverage for annuitants of the police and firemen's funds. Ill.Ann.Stat. ch. 108½, ¶¶ 5–167.5, 6–164.2 (Smith–Hurd 1987).

The legislation directed the board of trustees of the police and firemen's annuity funds to contract with health insurance carriers to provide group health insurance for their respective annuitants. *Id.* The police and firemen's funds were directed to contribute $55 per month for non-Medicare qualified annuitants and $21 per month for Medicare qualified annuitants toward the payment of their annuitants' monthly health insurance premiums. *Id.* The revenues to cover this 55/21 premium outlay were to be contributed by the city from a special property tax levy. *Id.;* Ill.Ann. Stat. ch. 108½, ¶¶ 5–168, 6–165 (Smith–Hurd 1987). Under the legislation, the annuitants were themselves responsible for any premiums exceeding the 55/21 levels, with the excess to be deducted by the police and firemen's funds from their annuitants' monthly pension checks. *Id.* The statutory 55/21 premium subsidy requirement apparently mirrored annuitant premium costs under the city health care plan at the time the legislation was enacted.

In 1985, the Illinois legislature enacted statutes addressing health care coverage for annuitants of the municipal and laborers' funds. Ill.Ann.Stat. ch. 108½, ¶¶ 11–160.1, 8–164.1 (Smith–Hurd 1987). This legislation differed from the statutory provisions governing health care coverage for police and firemen's funds. The municipal and laborers' fund legislation did not require the municipal and laborers' funds to contract for group health insurance. *Id.* Additionally, the municipal and laborers' funds were required to subsidize only $25 of the cost of health care coverage for their annuitants. *Id.*

Beyond the statutory minim for coverage of annuitant health care, RCPA alleges that the city, through various means of communication beginning in the mid–1980's, promised its employees free post-retirement health care coverage under the city health care plan. *Id.* ¶ 26. The city allegedly conducted a series of pre-retirement seminars in which city health and benefits office agents, *inter alia,* represented that the employees' post-retirement benefits included free lifetime health care under the city's plan. *Id.* ¶¶ 30–32. The city further is alleged to have prepared and distributed a booklet to employees and retirees who intended to participate in the health care plan. *Id.* ¶¶ 27–28. Additionally, the pension funds are alleged to have represented that they would pay the full premium charged to each of its annuitants for coverage under the health care plan, leaving the annuitants only with the obligation of paying additional premiums for spousal or dependent health care coverage. *Id.* ¶ 21.

Although health care coverage costs rose significantly during the 1980's, monthly premiums for annuitants of the police and firemen's funds remained at the 1982 55/21 levels, with the city apparently absorbing the increased costs. *See id.* ¶ 23. In October 1987, the city responded to the mounting costs of health care coverage by notifying all four pension funds that it intended to discontinue its subsidization of annuitant health care coverage. *Id.* ¶ 34. The city also filed suit in the Circuit Court of Cook

County against the pension funds, seeking to terminate annuitant health care coverage and to force the pension funds to reimburse approximately $58 million the city had expended on annuitant health care benefits through September 1987. *Id.* ¶ 34; *City of Chicago v. Korshak*, Circuit Court of Cook County, Chancery Div. No. 87 CH 10134. Although the state court dismissed the city's claims, a trial proceeded on the pension funds' counterclaims.

The city and pension funds ultimately reached a settlement of their dispute before the state court issued a ruling on the pension funds' counterclaims. Under the settlement agreement, the city and pension funds agreed to co-sponsor legislation before the Illinois General Assembly altering the then-existing Illinois Pension Code provisions governing annuitant health care. The resulting legislation that took effect on August 23, 1989, requires the city to pay at least 50 percent of annuitant health care costs through 1997. Ill.Ann.Stat ch. 108½, ¶¶ 5–167.5, 6–164.2, 8–164.1 and 11–160.1 (Smith–Hurd Supp.1991). The pension funds' contribution to individual annuitant health care premiums is increased to $65 a month for non-medicare eligible annuitants and $35 a month for medicare eligible annuitants, escalating to 75/35 beginning in 1993. *Id.* Revenues for the pension funds' subsidy continue to be funded by special city tax levies. *Id.* Any premium amounts not covered by the city and pension fund subsidies must be paid by the annuitants individually, through pension check withdrawals. *Id.* On December 12, 1989, the state court approved the settlement agreement that was embodied in the amendments to the Illinois Pension Code.

## B. Procedural History

On January 24, 1990, RCPA filed this class action against the city and pension funds on behalf of a proposed class comprised of:

> ... [A]ll annuitants of the City of Chicago Police, Fire, Municipal and Laborers'

Pension Funds and their spouses, survivors and dependents who are current participants in the City's Annuitant Healthcare Plan ... and whose participation began after December 31, 1987, but prior to August 23, 1989.

Complaint ¶ 12. RCPA contends that the *Korshak* settlement agreement is invalid as applied to individuals who retired prior to August 23, 1989, in reliance on the representations of the city and pension funds promising free post-retirement health care coverage under the city plan. *Id.* ¶ 37. RCPA seeks declaratory and injunctive relief barring the implementation of the *Korshak* settlement agreement also embodied in the amendments to the Illinois Pension Code co-sponsored by the city and pension funds as part of the settlement.

Ten retired city employees who currently participate in the city's health care plan as annuitants under the police fund subsequently moved for intervention and simultaneously filed a motion for class certification in conjunction with RCPA.[1] Eight of the proposed intervenors retired and began to participate in the city health care plan prior to August 23, 1989. The remaining two intervenors did not retire until after August 23, 1989, but their retirement benefits vested prior to that date. *See* Ahlfield Motion to Intervene ¶ 2. The motion for intervention was not accompanied by a pleading setting forth the claims for which intervention is sought, as required by Fed. R.Civ.P. 24(c). The intervenors purport to adopt the allegations of the complaint. However, the intervention motion asserts that all employees whose retirement benefits vested prior to August 23, 1989, also are entitled to the same benefits as pre-August 23, 1989 retirees. The accompanying motion for class certification filed in conjunction with that of the RCPA thus recasts the proposed class to reflect additional "vested" employees. The RCPA/intervenor motion requests certification of a class comprised of:

> All persons participating in the City of Chicago Annuitant Healthcare Program

---

1. The proposed individual intervenors are Thomas J. Ahlfield, Ignazio Bontempo, Patrick J. Boyle, Donald M. Jacobson, Michael Mona-ghan, Arthur Papineau, Laurence J. Thomas, Bob Valleyfield, William L. Tlapa and Stanley C. Lis.

whose participation is as or through a person who retired and began their participation after Dec. 31, 1987.

RCPA motion for class certification ¶ 1. However, the motion additionally requests certification of two subclasses:

> ... One subclass [of] those who participate as or through a person who retired prior to August 23, 1989.... Another [subclass of] those who participate as or through someone who vested in their City of Chicago Pension benefits on or before August 23, 1989, but retired after that date.

*Id.*

The court has received a separate motion for intervention and class certification filed by the Coalition of Active and Retired Employees Political Action Committee (the "coalition"), two of its officers, and an additional individual intervenor. The coalition is an Illinois not-for-profit corporation organized to protect the retirement benefits of former city employees who receive annuities from—or are vested with an interest in—one of the four pension funds. Like the motion filed by the individual intervenors, the coalition's intervention motion is not accompanied by a pleading setting forth the claims for which intervention is sought, as required under Fed.R.Civ.P. 24(c). The coalition, which is represented by the same attorney representing RCPA and the individual intervenors, also purports to adopt the RCPA complaint, yet seeks to expand the class for certification. The coalition requests certification of a class comprised of:

> All persons presently participating in the City of Chicago Annuitant Healthcare Program who either began participating in the program or vested in their City of Chicago retirement benefits on or before August 23, 1989.

Coalition motion for class certification ¶ 8. In addition, the coalition seeks certification of three subclasses defined as:

> (1) Those whose participation is as or through a person retired and began their participation on or before December 31, 1987, (2) those who participate as or through a person who retired during the period January 1, 1988 through August 23, 1989 ..., and (3) those who participate as or through someone who vested in their City of Chicago pension benefits on or before August 23, 1989, but retired or will retire after that date.

*Id.*

## DISCUSSION

### I. Class Certification

■ Rule 23 of the Federal Rules of Civil Procedure establishes a two-step procedure for determining when an action may appropriately proceed as a class action. Representative plaintiffs may sue on behalf of a class if (1) class members are so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) claims or defenses of the representatives are typical of those of class members; and (4) the representatives will fairly and adequately represent the interests of the class. Fed. R.Civ.P. 23(a); *In re VMS Secur. Litigation,* 136 F.R.D. 466, 473 (N.D.Ill.1991). Additionally, plaintiffs must satisfy one of the three subsections of Fed.R.Civ.P. 23(b). In the present action, plaintiffs seek certification under Rule 23(b)(2), which requires that the court find (1) the opposing parties' conduct or refusal to act must be generally applicable to the class, and (2) final injunctive or corresponding declarative relief is requested for the class.[2] Fed.R.Civ.P. 23(b)(2); 7A Wright, Miller & Kane, *Feder-*

---

2. The complaint advances the proposed class as certifiable under Fed.R.Civ.P. 23(b)(2). Complaint ¶ 11. The motions for class certification assert certification on Rule 23(b)(1), (2) and (3) grounds. Defendants object to certification on all three Rule 23(b) grounds. The motions for class certification appear to constitute an improper attempt to modify the pleadings that plainly state Rule 23(b)(2) as the basis of this action. *See Heastie v. Community Bank of*

*Greater Peoria,* 125 F.R.D. 669, 672 n. 3 (N.D.Ill. 1989); *Ridings v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas), Ltd.,* 94 F.R.D. 147, 150 n. 3 (N.D.Ill.1982). In any event, plaintiffs' reply brief states that certification is sought solely pursuant to 23(b)(2). Plaintiffs' Reply Brief in Support of Intervention and Class Certification at 3. Analysis therefore proceeds solely on Rule 23(b)(2).

al Practice & Procedure, § 1775 at 447–48 (1986); see Walters v. Thompson, 615 F.Supp. 330, 335 (N.D.Ill.1985).

On a motion for class certification, the court's inquiry is limited to whether the requirements of Rule 23 have been satisfied; the court shall not consider the merits of the plaintiffs' claims. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D.Ill.1986). The party seeking class certification bears the burden of demonstrating that certification is proper. General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982); Trotter v. Klincar, 748 F.2d 1177, 1184 (7th Cir.1984); In re VMS Secur. Litigation, 136 F.R.D. at 473.

Before proceeding to an analysis of the merits of the motions for class certification, a challenge to the motions to intervene requires initial attention. As noted above, the separately filed Ahlfield and coalition motions to intervene were not accompanied by the requisite pleadings setting forth the claims for which intervention is sought. Fed.R.Civ.P. 24(c). Plaintiffs contend that their adoption of the original complaint by reference in their motions to intervene is permitted under Fed.R.Civ.P. 10(c).

Plaintiffs' implicit assertion—that Rule 24(c) should not be applied in a needlessly technical manner—is well taken. A "motion to intervene may not just 'adopt' the pleadings of an original party." Shevlin v. Schewe, 809 F.2d 447, 450 (7th Cir. 1987). However, a district court has discretion to grant a procedurally inadequate motion if no prejudice results. Id. In the present motions, however, the proposed intervenors did not adopt the RCPA complaint outright. Each of the intervenors purport to adopt the RCPA complaint, but then attempt to effectuate a de facto amendment of the complaint by: (1) asserting facts in addition to those alleged in the complaint, and (2) redefining and significantly expanding the class definition advanced in the complaint. These significant modifications to the complaint render waiv-

er of the Rule 24(c) pleading requirement inappropriate.

Additionally, the procedural flaw in the motions to intervene was raised by defendants well in advance of the completion of the first round of briefing on plaintiffs' motions for intervention and class certification. Rather than undertake modest but necessary corrective action during the lengthy briefing period, plaintiffs inexplicably chose not to address the problem. In the second round of briefs on the motion for reconsideration, plaintiffs proceed in the same curious vein. Instead of accompanying their brief with the requisite proposed pleading, the intervenors choose to employ a technical argument to excuse the procedural deficiencies in their motions to intervene. Under all these circumstances, waiver of the Rule 24(c) pleading requirement is inappropriate.

Denial of the motions to intervene moots the intervenors' accompanying motions for class certification. However, in anticipation of a belated attempt by the intervenors to refile procedurally correct motions, the court analyzes the merits of the proposed intervenors' motions for certification as class representatives in the context of addressing RCPA's certification motion.

RCPA's class certification motion raises a second preliminary matter regarding the definition of the class to be certified. As noted above, RCPA's motion for class certification advances a different definition of the class than the definition in the complaint. RCPA's apparent attempt to amend the pleadings de facto through its motion for class certification is inappropriate. Analysis proceeds on the basis of the class definition stated in the complaint. See Heastie v. Community Bank of Greater Peoria, 125 F.R.D. 669, 672 n. 3 (N.D.Ill. 1989); Ridings v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas), Ltd,, 94 F.R.D. 147, 150 n. 3 (N.D.Ill.1982).

## 1. Numerosity

The proposed class must be so numerous that joinder of all members is impracticable. The complaint need not al-

lege the exact number or identity of class members. *In re VMS Secur. Litigation,* 136 F.R.D. at 473, citing *Patrykus v. Gomilla,* 121 F.R.D. 357, 360 (N.D.Ill.1988) (additional citation omitted). A finding of numerosity may be supported by common sense assumptions. *Id.,* citing *Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 785 (N.D.Ill.1984). In making a numerosity determination, the court additionally considers judicial economy and the ability of class members to institute individual suits. *Id.,* citing *Patrykus,* 121 F.R.D. at 361.

Plaintiffs estimate that thousands of annuitant beneficiaries of the four pension funds or their spouses or dependents began participating in the health care plan between January 1, 1988 and August 23, 1989. Defendants do not dispute that the class is sufficiently large to satisfy the numerosity requirement and that joinder of all class members would be impracticable, if not impossible. Accordingly, the numerosity requirement of Rule 23(a) is satisfied. *See Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339, 343 (N.D.Ill.1978) (class of over 1,000 is indisputably sufficient).

### 2. Commonality

■■■ The party seeking class certification must demonstrate that there is at least one question of law or fact common to the class. Fed.R.Civ.P. 23(a)(2); *In re VMS Secur. Litigation,* 136 F.R.D. at 473. "Not all factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members." *Riordan v. Smith Barney,* 113 F.R.D. at 63 (citation omitted). Thus, class actions cannot be defeated on commonality grounds solely because there are some factual variations among the claims of individual members. *Id.,* citing *Patterson v. General Motors Corp.,* 631 F.2d 476, 481 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). In the present case, the issues of whether the city and pension funds made binding promises regarding the provision of post-retirement health care coverage to annuitants and whether implementation of the *Korshak* settlement agreement breached the city

and pension funds' alleged promises pose questions of law and fact common to all putative class members. *See, e.g., Spencer v. Central States, Southeast and Southwest Areas Pension Fund,* 778 F.Supp. 985, 989 n. 2 (N.D.Ill.1991) (issue of whether pension fund breached fiduciary duty in offering contributory service credit to some but not all benefit plan participants poses questions of law and fact common to class of deprived plan participants). Accordingly, the commonality element is met in the present action.

### 3. Typicality

■■■ In order to certify a class, the claims of the representative plaintiffs must be typical of the class claims. Fed.R.Civ.P. 23(a)(3). While numerosity and commonality focus on the characteristics of the class, typicality and adequacy of representation focus on the characteristics of the class representatives relative to the class. *See* 1 H. Newberg, *Newberg on Class Actions,* § 3.13 at 163 (1985). Typicality, like adequacy of representation, insures that the interests of the named plaintiffs are sufficiently coextensive or interrelated with the interests of putative class members to ensure that the interests of class members will be adequately protected in their absence. *General Tel. Co.,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. Typicality exists if the putative class representatives' claims arise from the same event, practice or course of conduct that gives rise to the claims of the absent class members. 1 H. Newberg, *Newberg on Class Actions,* § 3.13 at 167 (1985). The court must determine if the "named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983); *In re VMS Secur. Litigation,* 136 F.R.D. at 474. To meet the typicality requirement, the named representatives must establish the bulk of the elements of each class member's claims when they prove their own. *Brooks v. Southern Bell Tel. & Tel. Co.,* 133 F.R.D. 54, 58 (S.D.Fla.1990), citing *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147,

102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *see also Spencer v. Central States*, 778 F.Supp. at 989–90.

▆▆▆ As an initial matter, many of the proposed intervenor/class representatives are not members of the putative class. It is an essential prerequisite of a class action that class representatives be members of the class they propose to represent. *Edmondson v. Simon*, 86 F.R.D. 375, 379 (N.D.Ill.1980); 7A Wright, Miller & Kane, *Federal Practice & Procedure*, §§ 1761 at 132–33 (1985). The proposed class is comprised of:

> ... [A]ll annuitants of the City of Chicago Police, Fire, Municipal and Laborers' Pension Funds and their spouses, survivors and dependents who are current participants in the City's Annuitant Healthcare Plan ... and whose participation began after December 31, 1987, but prior to August 23, 1989.

Proposed individual intervenors Arthur T. Cholly and Benedict Scacchiti retired and began participating in the annuitant health care plan prior to January 1, 1988. Coalition motion to intervene at 1 (Scacchiti "a pre–1988 retiree"); Cholly Dep. at 12, 49. Recognizing this fact, plaintiffs have withdrawn Cholly and Scacchiti as individual intervenors. Proposed individual intervenors William L. Tlapa and Stanley C. Lis retired after August 23, 1989. Ahlfield Motion to Intervene ¶ 2; Tlapa Dep. at 13–14. Accordingly, these individuals are not properly class representatives.

▆▆▆ The remaining proposed class representatives generally assert that their claims are typical of the claims of the class. Each putative class representative, it is argued, seeks to compel the city to fulfill its obligation to provide lifetime health care coverage and to compel the pension funds to fulfill their subsidy obligations. This unadorned assertion merely repeats plaintiffs' commonality argument. Although commonality is a necessary condition of typicality, standing alone it is not a sufficient condition to establish typicality. Common requests for relief—a given in a case for declaratory and injunctive relief—or common legal theories do not establish typicality when the facts required to prove the claims are markedly different among class members. *Spencer v. Central States*, 778 F.Supp. at 990. Plaintiffs must establish that the underlying basis of their individual claims is significantly coextensive with the claims of the class generally. *See De La Fuente*, 713 F.2d at 232 (citations omitted).

▆▆▆ The claims of the proposed class representatives hinge on representations allegedly made by the city and pension funds to thousands of city employees. The putative class representatives contend that these representations entitle them to free lifetime post-retirement health care coverage from the city, with part of the cost to be paid by the pension funds. They further assert that the representations were contractual in nature, with post-retirement health care constituting a term and condition of employment. Plaintiffs alternately argue that even if the representations did not create a contractual obligation, the annuitants relied on the representations to their detriment. On this theory, plaintiffs contend that the city and pension funds are equitably estopped from altering the previously existing coverage.

The communications allegedly supporting these claims, however, were not uniformly transmitted to all putative class members. The communications are alleged to have been made primarily in the form of oral presentations delivered by city health and benefits office agents at numerous, separately conducted and organized pre-retirement seminars for various city departmental employees. The present record provides substantive evidence only of seminars offered to police department employees. The individuals making the presentations to the police department employees did not appear before the prospective annuitants of the firemen, laborer and municipal funds. Kordeck Dep. 52–53. Thus, at the most fundamental level of inquiry into the underlying basis for the claims of class members, questions involving the content of the communications, the manner in which they were made, by whom they were made, and whether the speaker had a relationship suf-

ficient to justify attribution of the statement to the city or pension funds will vary from class member to class member, depending on which city department and pension fund was involved. *See Spencer v. Central States*, 778 F.Supp. at 990–91.

▮ Moreover, when an action "is based substantially on oral rather than written communications," as in the present case, "treatment as a class action is generally inappropriate." *Id.*, citing *Glick v. E.F. Hutton & Co.*, 106 F.R.D. 446, 449 (E.D.Pa.1985); *see also Graham v. Security Savings & Loan*, 125 F.R.D. 687, 691 (N.D.Ind.1989); *Seiler v. E.F. Hutton & Co.*, 102 F.R.D. 880, 888 (D.N.J.1984). An exception to the rule disfavoring class actions rooted in oral representations applies in cases in which " 'essentially identical representations were made to all members of the proposed class.' " *Spencer v. Central States*, 778 F.Supp. at 991 n. 5, quoting *Glick*, 106 F.R.D. at 449. The plaintiffs bear the burden of demonstrating that the oral communications were uniform in nature. *Id.; Glick*, 106 F.R.D. at 450.

In the present case, the putative class representatives offer some evidence regarding oral presentations made by city health and benefits office agents at police pre-retirement seminars. *See* Kordeck Dep. at 47–59. Plaintiffs do not offer any evidence regarding communications to the prospective fire, laborer and municipal fund annuitants, let alone evidence that might support an inference that the communications made to the fire, laborer and municipal annuitants were typical of the communications made at the police pre-retirement seminars. Indeed, the fact that the individuals who communicated to future police annuitants had no knowledge of pre-retirement seminars offered to future firemen, laborer or municipal fund annuitants suggests that the presentations likely varied among the four pension fund annuitant groups. Kordeck Dep. at 52–53. *See Spencer v. Central States*, 778 F.Supp. at 990–91. In proving their own claims, the remaining proposed individual class representatives, who are culled exclusively from the ranks of police department retirees,

would not be able to establish a core element of the claims of fire, municipal and laborer annuitant class members.

Similarly, RCPA is comprised solely of retired police department employees and their spouses. Thus, RCPA is no better situated to vindicate the claims of fire, municipal and laborer annuitant class members than any of the proposed individual class representatives. The coalition membership manifests a similar flaw, as it is comprised almost exclusively of active and retired police and fire department employees. Cholly Dep. 33–34. The coalition has not offered any direct evidence regarding the basis of the claims of their fire annuitant members. Additionally, the record is barren of evidence relating to the claims of municipal and laborer annuitants, who are not visible in the membership ranks of the coalition or in the present class action proceedings. The coalition has failed to meet its burden of establishing the requisite uniformity in the oral representations allegedly made to its admittedly broader constituency.

Even within the retired police context, for which the record offers at least some basis for analysis, the evidence offered for class certification purposes does not establish uniformity in the oral communications made at the pre-retirement seminars. Herbert Kordeck, the city health and benefits office agent who allegedly made the binding oral communications regarding annuitant health care benefits to future police annuitants, testified in his class certification deposition that he stopped participating in the retirement seminars in April 1986. Kordeck Dep. at 5. The putative individual class representatives attended pre-retirement seminars from 1987 to 1989. Ahlfield Aff. ¶ 2; Boyle Aff. ¶ 2; Thomas Aff. ¶ 2; *see also* Tlapa Aff. ¶ 2. Kordeck's testimony therefore lacks foundation concerning the uniformity of the presentations made to the proposed class representatives. Because Kordeck's testimony is the sole evidence offered by the proposed class representatives addressing the uniformity in the presentation made at the pre-retirement seminars, the proposed class representatives have not met their burden

of establishing that the oral representations were standardized and uniform. *Spencer v. Central States,* 778 F.Supp. at 991 n. 5 (citations omitted).

More significantly, most of the proposed individual class representatives did not attend any of the pre-retirement seminars at which the city and pension funds allegedly made the binding representations. *See* Valleyfield Aff. ¶ 2; Jacobson Aff. ¶ 2; Bontempo Aff. ¶ 2; Monaghan Aff. ¶ 2; Papineau Aff. ¶ 2; *see also* Lis Aff. ¶ 2; Cholly dep. at 57. The basis for the claim of entitlement to benefits of these individuals varies. Proposed intervenor Valleyfield bases his claim of entitlement solely on the fact that he worked for the city police department his entire career. *See* Valleyfield Aff. ¶ 3. Proposed intervenor Papineau bases his entitlement claim solely on his "many years of devotion and loyalty to the people of Chicago." Papineau Aff. ¶ 3. Patrick Boyle similarly does not base his claim of lifetime health care coverage on direct representations made by city or pension fund agents, but on word of mouth from police officers he supervised and police retirees. Boyle dep. at 18–19. *See also* Bontempo Aff. ¶ 3; Monaghan Aff. ¶ 3; Lis Aff. ¶ 3; Cholly dep. at 57–58.[3]

All told, the proposed class representatives fail to establish a uniformity in the oral communications upon which they base their claims. At a more general level, they have failed to establish that their claims are uniformly based on oral representations or written communications from the city or pension funds. The court concludes, therefore, that the claims of the proposed class representatives do not "arise from the same event or practice or course conduct that gave rise to the claims of the other class members." *De La Fuente,* 713 F.2d at 232.

■ Plaintiffs' estoppel claims also fail to satisfy the typicality required for class certification. The extent to which each class member relied on the various oral representations is relevant to the estoppel theory advanced in the complaint. *See National Ben Franklin Ins. Co. v. Davidovitch,* 123 Ill.App.3d 88, 93, 78 Ill.Dec. 577, 581, 462 N.E.2d 696, 700 (1st Dist.1984) (under Illinois law, party claiming benefit of estoppel must prove "reasonable reliance upon the acts or representations of the party sought to be estopped, without knowledge of or convenient means of learning the true facts") (citations omitted). The varying nature of the communications upon which the estoppel claims are based only magnifies the obvious fact that reliance varies from individual to individual.

■ Plaintiffs contend that their estoppel claim will not require individualized inquiry into the reliance of each employee because employer representations regarding a term and condition of employment are established under Illinois law when an employee continues to work for an employer until retirement. Plaintiffs cite only *Buddell v. Board of Trustees,* 118 Ill.2d 99, 112 Ill.Dec. 718, 514 N.E.2d 184 (1987), in support of their reliance argument. *Buddell* involved the issue whether a provision of the Illinois Pension Code denying a state employee's right to purchase additional credit in the state university retirement system violated the Illinois Constitution's prohibition against impairing pension benefits. *Buddell* does not remotely allude to the issue of employee reliance on employer representations, as plaintiffs contend. *Buddell* is therefore inapposite. Plaintiffs' estoppel claim inescapably requires individualized inquiry into reliance and whether reliance was reasonable in widely varying individual circumstances. Accordingly, potential defenses unique to a subset of the class also defeats typicality. *See Spencer v. Central States,* 778 F.Supp. at 990–91; *McNichols v. Loeb Rhoades & Co.,* 97 F.R.D. 331, 334–35, 346 (N.D.Ill.1982) (arguable reliance defense peculiar to named plaintiffs or small subset of plaintiffs may destroy typicality), citing *J.H. Cohn & Co.*

---

3. The complaint also alleges that the claims of entitlement to lifetime health care arise from written materials distributed by the city and/or pension funds to the annuitant class members. Notably, none of the proposed individual class representatives base their claims upon written representations.

*v. American Appraisal Associates, Inc.,* 628 F.2d 994 (7th Cir 1980).

Failure to meet the Fed.R.Civ.P. 23(a)(3) typicality requirement obviates the need to consider arguments regarding adequacy of representation pursuant to Rule 23(a)(4) and the Rule 23(b) factors. *See United Indep. Flight Officers, Inc. v. United Air Lines, Inc.,* 572 F.Supp. 1494, 1500 (N.D.Ill. 1983). However, as an independent basis for denial of class certification, the court addresses certain aspects of plaintiffs' adequacy as class representatives.

### 4. Adequacy of Representation

 In determining whether the named plaintiffs adequately represent the interests of the class, the court examines two factors: (1) whether conflicts of interest exist between the representatives and the rest of the class members, and (2) whether plaintiffs' counsel will adequately protect the interests of the class. *In re VMS Secur. Litigation,* 136 F.R.D. at 478; *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir.1986); 1 H. Newberg, *Newberg on Class Actions* § 3.22 at 198 (1985).

#### a. Conflicts of Interest

 The interests of a class representative must be wholly compatible with and not antagonistic to the interests of the class. *Hansberry v. Lee,* 311 U.S. 32, 44–45, 61 S.Ct. 115, 119–20, 85 L.Ed. 22 (1940); *United Indep. Flight Officers, Inc. v. United Air Lines, Inc,* 572 F.Supp. at 1500; *Edmondson v. Simon,* 86 F.R.D. at 382; Wright, Miller & Kane, 7A *Federal Practice & Procedure,* § 1768 at 326 (1986). RCPA Executive Secretary Richard Jones was a member of the board of trustees of the police fund at the time the *Korshak* settlement between the city and pension funds was approved. The present complaint alleges that annuitant fund trustees breached their fiduciary duty to their annuitants by approving the *Korshak* settlement. Consequently, Jones and the RCPA leadership are plainly beset with a conflict of interest that may hinder vigorous prosecution of the present action. That conflict is brought to a finer point by evidence that Jones himself voted in favor of the *Korshak* settlement while acting in his capacity as a police fund trustee. *See* McDonough Dep. at 140 (police fund trustees unanimously approved *Korshak* settlement).

Additionally, RCPA has not supported its contention that its membership is substantially united in its opposition to the *Korshak* settlement. The RCPA membership is not limited to only participants in the city's annuitant health care plan whose premiums increased as a result of the *Korshak* settlement. The membership ranks also include annuitants who, at least temporarily, have benefited from the *Korshak* settlement and whose position will be worsened should the present action succeed. Pierce dep. at 112–13; Boyle dep. at 84–86. Moreover, a full 25 percent of the RCPA membership does not participate in the city's annuitant health care plan. As the city and pension funds note, these RCPA subgroups within the putative class pose a risk of real conflict within the RCPA over its present attempt to bar implementation of the *Korshak* settlement. *See United Indep. Flight Officers, Inc. v. United Air Lines, Inc.,* 572 F.Supp. at 1500 (subgroup within class who benefited from action that class is challenging poses "very real risk of conflict" within class). Although this potential conflict alone may or may not preclude RCPA representation of the putative class, it constitutes a significant additional factor weighing against certification of RCPA as a class representative, particularly in light of the fact that class members in a Rule 23(b)(2) action seeking injunctive relief cannot "opt out" of the class, unlike a Rule 23(b)(3) action. 1 H. Newberg, *Newberg on Class Actions,* § 3.30 at 214 (1985).

The financing of the present action also is troubling. At an earlier stage of these proceedings, the court was asked to review RCPA board and membership meeting minutes, as well as monthly reports issued by the RCPA board to its members. This documentary evidence included direct solicitation of the membership for donations to finance ongoing activities not only in the present case, but also in litigating the

*Korshak* appeal. The existing record on this issue falls short of permitting express findings of fact. However, the record suggests that RCPA's participation in and contribution of resources to the *Korshak* litigation, which involves a membership faction distinct from the putative class in the present action, may be draining limited resources that would otherwise be devoted to prosecuting this case. RCPA's ongoing *Korshak* activities against the same defendants, but on behalf of an entirely distinct annuitant class, pose the potential of impairing RCPA's current ability to vigorously prosecute the present action.

Proposed class counsel contends that inquiry into the financial ability of the class representatives to effectively pursue the present class action is inappropriate. Counsel's contention flies in the face of case law clearly holding that class representatives' ability to adequately finance litigation of a class action is relevant to the question of adequacy of representation. *See Brooks v. Southern Bell Tel. & Tel. Co.*, 133 F.R.D. at 58–59 (class representatives' ability to adequately finance action relevant to adequacy of representation inquiry), citing *Susman v. Lincoln Am. Corp.*, 561 F.2d 86 (7th Cir.1977). The court acknowledges that "there is nothing wrong with other class members contributing to the heavy expenses of litigating a class action suit." *Grace v. Perception Technology Corp.*, 128 F.R.D. 165, 171 (D.Mass 1989). However, plaintiffs' counsel adamantly asserts that the present action is not being financed by the putative class members. Instead, he represents in no uncertain terms that he alone is advancing all litigation costs, and repayment is contingent on the outcome of the case.

Viewing the financing of the present action through a lens of counsel's own making, his insistence that he is advancing all litigation costs is sharply contradicted by evidence the court has examined in adjudicating discovery motions. For example, in a October 1991 newsletter to its membership, RCPA reprinted a letter from plaintiffs' counsel to RCPA President John Pierce. In the published letter, plaintiffs' counsel stated that the expense of litigating the present class action was "very substantial and growing ... and we need your help. We need money to help defray the expenses of litigation...."[4] RCPA Newsletter, October 1991, at 2 (appended to RCPA's motion for clarification on attorney-client privilege). Given his repeated solicitations for financial assistance in defraying litigation expenses, particularly to an organization that plaintiffs' counsel himself has characterized as comprised of retirees of modest means, counsel's insistence that he alone is advancing all litigation costs and that he is able to adequately finance the present action are not persuasive.

### b. *Adequacy of Plaintiffs' Counsel*

The adequacy of representation requirement also raises concerns about the potential conflicts of plaintiffs' counsel. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. Plaintiffs' counsel is general counsel to RCPA itself.[5] The manifest conflict of interest within the RCPA leadership taints the appropriateness of RCPA's general counsel acting as class counsel, particularly in light of the close relationship between counsel and the RCPA leadership. *See*

---

**4.** More recently, in a letter from plaintiffs' counsel to RCPA president Pierce reprinted in the January 1992 RCPA newsletter, counsel states:

> We need further financial help.... We need your financial commitments and assistance critically at this time just to defray expenses.... If each annuitant would contribute one month's new premiums to help in our costs, we would have an appropriate war chest for conducting the battle. We need your help.

The January 1992 newsletter then directs all RCPA members wishing to make a contribution to mail checks payable to "Clinton Krislov," plaintiffs' counsel. RCPA Newsletter, January 1992, at 2 (appended to city's response to RCPA memorandum on the issue of RCPA standing).

**5.** Plaintiffs' counsel contends that he is merely "honorary counsel" rather than RCPA general counsel. The letterhead of the January 1992 newsletter sent to all RCPA members lists plaintiffs' counsel as both RCPA director and general counsel. RCPA Newsletter, January 1992, at 1 (appended to city's response to RCPA memorandum on the issue of RCPA standing).

*Wagner v. Lehman Bros. Kuhn Loeb, Inc.,* 646 F.Supp. 643, 661 (N.D.Ill.1986) (attorney for class representative must be able to stand in fiduciary relationship to absent class members as well as to class representatives). Additionally, the potential for conflicts within the RCPA membership stemming from the potentially harmful impact of the requested relief on RCPA members who have benefited from the *Korshak* settlement agreement threatens to place counsel in an untenable position in simultaneously representing the interests of all putative class members. Plaintiffs' counsel's status as RCPA general counsel also taints the propriety of counsel's continued representation of the coalition as a proposed class representative. In light of all these circumstances, and most particularly counsel's fiduciary obligations to the conflicted RCPA leadership, plaintiffs' counsel cannot adequately represent the putative class members. Plaintiffs therefore have failed to demonstrate that they satisfy the Rule 23(a)(4) adequacy of representation requirement.

## II. Standing

▇▇ RCPA pursues the present action solely in its capacity as the associational representative of its members. RCPA's inadequacy as class representative precludes it from continued participation as the representative of the RCPA membership. Therefore, the court, on its own motion, directed the parties to brief the issue of RCPA's standing to continue as a party plaintiff.[6]

▇▇ An association may have standing to: (1) redress an injury to itself, or (2) obtain relief on behalf of its members. *See Pennell v. City of San Jose,* 485 U.S. 1, 7, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988); *Simon v. Eastern Kentucky Welfare*

*Rights Organization,* 426 U.S. 26, 40, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976); *Freedom from Religion Foundation, Inc. v. Zielke,* 845 F.2d 1463, 1469 (7th Cir. 1988). RCPA does not seek to redress an injury to itself. *See RCPA v. City of Chicago,* No. 90 C 407 slip op. at 4, 1990 WL 78306 (N.D.Ill. June 4, 1990). The only question is whether RCPA has standing to obtain relief on behalf of its members.

▇▇ An organization has associational standing to seek judicial relief on behalf of its members when:

(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2440–41, 53 L.Ed.2d 383 (1977). *See also Pennell v. City of San Jose,* 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988). The court need not address the first two requisite elements for associational standing, because RCPA clearly fails to meet the third element; namely, that "neither the claim asserted nor the relief requested require[ ] the participation of individual [association] members in the lawsuit." *Hunt,* 432 U.S. at 342–43, 97 S.Ct. at 2441.

RCPA seeks only declaratory and injunctive relief. As this court has previously recognized, the relief requested by RCPA does not require individualized inquiry into the fact and extent of damages. *See RCPA v. City of Chicago,* No. 90 C 407, slip op. at 5, 1990 WL 78306 (N.D.Ill. June 4, 1990). Citing *Warth v. Seldin,* 422 U.S.

---

**6.** Early in this litigation, this court concluded that RCPA "has standing as representative of its members." *Retired Chicago Police Association v. City of Chicago,* slip op. at 6, 1990 WL 78306 (N.D.Ill. June 4, 1990). RCPA contends that this ruling constitutes the law of the case and implies that the prior ruling is not subject to revision or reconsideration after further development of the record. However, an order "is subject to revision at any time before the entry

of judgment adjudicating all the claims and rights and liabilities of all of the parties." Fed. R.Civ.P. 54(b); *see Continental Casualty Co. v. Great American Ins. Co.,* 732 F.Supp. 929, 931–32 (N.D.Ill.1990); *Beeman v. Safeway Stores, Inc.,* 724 F.Supp. 674, 679 (W.D.Mo.1989). The court has yet to issue a final order adjudicating the claims of all parties, nor has the prior ruling been certified as final and appealable. *See* Fed. R.Civ.P. 54(b).

490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), RCPA contends that it meets the third element for establishing associational standing merely because it seeks only injunctive and declaratory relief.

In *Warth,* the plaintiff association sought monetary relief for alleged injuries to its members. The damages claims were not common to all of the association's members, nor were they shared in equal degree by the injured members. The nature of the damages sought thus required individualized inquiry into the fact and extent of the injury to each member of the association. In concluding that the association lacked standing to seek relief on its members' behalf, the Court stated that

> whether an association has standing to invoke [a] court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.

*Warth,* 422 U.S. at 515, 95 S.Ct. at 2213.

Plaintiffs contend that the quoted passage from *Warth* should be read as permitting associational standing under *Hunt* whenever an association seeks only injunctive or declaratory relief on behalf of its members. The court disagrees. *Warth* merely recognizes the reality that actions seeking declaratory or injunctive relief rarely require individualized inquiry into the question of *damages.* Conversely, actions seeking monetary relief seldom provide an appropriate basis for associational standing because injuries typically are peculiar to each individual member and thus require individualized inquiry into the fact and extent of injury. *Id.,* 422 U.S. at 515–16, 95 S.Ct. at 2214–15; *see also Rockford v. Principals and Supervisors Ass'n v. Board of Education,* 721 F.Supp. 948, 950–51 (N.D.Ill.1989). No court has allowed associational standing in a case seeking monetary relief. The fact that an association seeks injunctive and not monetary re-

lief merely lessens the potential need for individual member participation. *Southwest Suburban Board of Realtors, Inc. v. Beverly Area Planning Ass'n,* 830 F.2d 1374, 1381 (7th Cir.1987). It does not necessarily foreclose the need for individual member participation. *See id.*

In focusing almost exclusively on the nature of the relief requested, RCPA ignores the equal significance of the nature of the *claim* to the fulfillment of the third element of associational standing. *See Hunt,* 432 U.S. at 342–43, 97 S.Ct. at 2440–41. Where the claim advanced by an association on behalf of its members presents a pure issue of law, the participation of individual members of an association is usually unnecessary and associational standing is appropriate. *See, e.g., International Union, UAW v. Brock,* 477 U.S. 274, 287, 106 S.Ct. 2523, 2531, 91 L.Ed.2d 228 (1986) (associational standing found where "suit raises a pure question of law"). However, where the nature of the claim involves questions of fact that require the participation of individual members, associational standing is not appropriate even when the association seeks only injunctive relief. *Southwest Suburban Board of Realtors,* 830 F.2d at 1381.

As noted in the discussion of class certification, RCPA's claim that its members are entitled to free lifetime health care coverage is based on a broad array of communications, both written and oral, direct and indirect, emanating from countless sources. The present action clearly requires individualized proof and individual member participation to determine the time, place, source and content of the communications that are the core of this litigation. *See Rockford Principals and Supervisors Ass'n v. Board of Education,* 721 F.Supp. at 950 (associational standing inappropriate where "[i]ndividualized proof will be necessary to prove the existence of the alleged contractual-type relationships whether termed as 'mutually explicit understandings' or implied employment contracts").

Similarly, RCPA's estoppel claim requires individualized inquiry into the members' reliance on various alleged communi-

cations. The need for individualized proof as to each class member's state of mind renders associational standing inappropriate. *See, e.g., Rockford Principals and Supervisors Ass'n v. Board of Education,* 721 F.Supp. at 950 (implied contract claim requires proof of individual association members' state of mind, making associational standing inappropriate); *Simer v. Rios,* 661 F.2d 655, 682 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982) (individualized inquiry into state of mind makes associational standing inappropriate). The nature of the claims advanced by RCPA makes the participation of its members "indispensable to the proper resolution of the cause." *Warth,* 422 U.S. at 511, 95 S.Ct. at 2212. Because the nature of the claims of its members are not susceptible of presentation "in a group context," *Hunt,* 432 U.S. at 344, 97 S.Ct. at 2442, RCPA lacks the requisite associational standing to invoke the remedial powers of this court on behalf of its members.

## CONCLUSION

The motion of plaintiff Retired Chicago Police Association and the proposed intervenors for reconsideration is granted. The February 6, 1992 memorandum opinion and order is vacated. The motions to intervene are denied. The proposed intervenors' motions for class certification are denied as moot. Retired Chicago Police Association's motion for class certification is denied. The complaint of the Retired Chicago Police Association is dismissed for lack of standing. The complaint is dismissed without prejudice as to purported class members.